Eerie, eerie, this Honorable Court has reconvened. Please be seated. Thank you. Please call the first case. Our first case this afternoon. 5-12-0564 W.C. Freeman, United Coal Mining Company, Appellant v. Workers' Compensation Commission, David Sims, Appellee. Counsel? Please be seated. Nice seeing you again. Thank you. Welcome. Mr. Besore, my name is Ken Wirtz and I represent the Appellant Freeman, United Coal Mining Company. You didn't say it was nice to see me when I was on the front lawn. It's always a special pleasure to see you, Justice Hoffman. Thank you. And all of you. This is an occupational disease claim. The claim is black lung. It was tried before the arbitrator and the claim was denied on the basis that there was no disease and no disablement. The commission reversed finding disease. I stated in my brief as one of the errors in the case was the finding of disease. I'm not going to stand here and tell you that there's not evidence in the records that supports disease. I believe that the finding of disease in this case was against the manifest weight of the evidence. I base that on not only the quality of the expert opinion that was contrary to the presence of the disease or the quantity, but also the diagnosis of disease here as found by the B readers, the radiologists, on behalf of the appellee, is contrary to the way the disease process first presents and progresses. And so for those reasons, I've cited in my brief that as being error. But the issue that I really want to focus on, the issue that's of most interest and really requires the court's attention, is the finding of disablement here. The commission, and if you want to turn to the appellant's appendix, I'm going to be looking at the decision of the arbitrator at A16 of the appendix is what I'm going to be talking about. The commission in reversing the arbitrator was critical at the top of that page and actually quoted from the arbitrator's decision her findings, then concluding that none of that has to do with the presence of disease. I agree, and that's not what the arbitrator was doing there. What she was doing were citing facts to support her conclusion of there being no functional disablement. In fact, that's what she says when she says the arbitrator relies upon petitioner's denials of shortness of breath, etc., to prove by preponderance of evidence that he suffered, that he didn't suffer any disability. The commission read that and said, she's off base. That doesn't have anything to do with disease. You can have disease without having symptoms, and I agree, you can't. It's primarily a radiographic abnormality. The commission then reversed finding presence of disease, and in doing so, though, the commission didn't reverse the arbitrator on the finding of no functional impairment. What happened is, she found her, the commission found disease, and then also on that page, if you drop down to the next to last paragraph, states petitioner showed disablement within two years after August 31, 2007, that's the last date he worked, the date of his last exposure to cold mites. All experts agree that a minor with simple pneumoconiosis should not be exposed to further coal mine dust, and it's on that basis, then, that disability was awarded. So we need to focus on the definition of disablement, and I put that in my brief for you at page 8, and as you all know, with occupational disease, we actually define the term disablement, and it's stated in the alternative. You either must prove a functional impairment related to that disease, or, and I'll quote from the act, the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he or she claims compensation. So now let's look at the facts. In this case, the appellee testified that but for his layoff from work, he would have returned to work his next shift. There is no testimony or evidence of any functional impairment that this gentleman suffered, and as I say, the commission didn't find functional impairment, so now we're talking solely about the second prong of the definition of disablement. This gentleman said, had I not been laid off, I would have gone back to work. Can I ask a question? Yeah, go ahead. Can a coal miner who has CWP ever not be disabled? Yes. How? The fact of the matter is, a man who has a disability may, contrary to what he should or should not do, reenter the environment that caused that impairment. But the fact of the matter is, that doesn't change the fact that he's disabled. It's just that he's ignoring the disability. He's going to go back into that coal mine, and he's going to work, even though every doctor that you could ever go to, if he's got CWP, says, stay away from coal mines, because you're just going to get worse. It ain't going to get better. So my question is, just because he's willing to go back into the coal mine, does that make him any less disabled? Yes. Why? Absolutely. Why? Because of the definition of disablement we have in the statute that we must follow. So first of all, not everyone, in fact it's the minority, who have simple pneumoconiosis have any functional impairment. There is none. That's classic for the disease. So we look here, then, to the second part of the definition, which we have to, to determine whether disablement, and again, we're using a statutory term here, to determine whether he satisfies it. And it says, the event of becoming disabled from earning full wages. There was no event in this case. This gentleman testified, but for being laid off, I would have continued to work. In fact, he signed up on a panel form to be recalled to work. And then, in that same year, took his retirement, received his pension. And only in the following year, then, he sees a physician, he was sent to see, who says, you've got black lung, you can't be exposed further. Is that the event, then? Are we going to interpret this statute to allow, in essence, expo facto proof of disablement? Is that what was intended by the legislature here? So you're saying the event was the mine closed? I'm saying there was no event. Well, there was an event. The mine closed, and he couldn't return to earn his wages. I'm not saying that's the event. What I'm saying is, the event was not an occupational disease. It clearly was not, because he was not informed of even having a disease, or being able to act on that knowledge, until after he had been laid off, retired, and took his pension. As an example, I guess I could draw a parallel, just as Hoffman, you, I believe, Wooddale Electric case, where a wage differential was asked for. And the argument that was presented to counter that was, no, this gentleman took a normal retirement. He can't get a wage differential. In that case, there was evidence that gentleman retired because of his injury. I think it was a shoulder injury. He acted on that. All of the cases that Mr. Rosor has cited for the proposition that the event can be an occupational disease causing you disablement, causing you to leave work, in all of those cases, the claimant was informed of an injury or a disease and acted on it. There was none of that here. He had no ability. He had, at the time he learned he had an occupational disease, no ability to go back to that job if he wanted to because he had resigned and taken his full pension. I do not believe that's what the legislature meant by event. And also, this court in Dawson v. Industrial Commission, it's an old case, where a wage differential was actually prayed for. The citation is 382 LF 3rd, 581, I believe it's in our brief. If not, forgive me. But in that case, a wage differential was asked for in an occupational disease claim just like this, a black loan. And the appellate court said, if you cannot show that but for your disease, you are not earning the same amount of money you were before, then you haven't proven a wage differential. In other words, there's a required nexus. And that is the same nexus that we find here in the definition of disablement in Section 1E. All right. The definition of disablement is stated disjunctive. There's two forms. Let's talk about the first one. Impairment or partial impairment, temporary or permanent, in the function of the body. Correct. How can you not say a guy has got CWP, doesn't he have an impairment or partial impairment, temporary or permanent, in the function of his body? Well, two answers to that. Number one, that is what the evidence shows in this case. But number two, the commission found no functional impairment. That is not the basis for their reversal in this case, they said no one has taken error with that finding of no functional impairment. But we could affirm the commission on any evidence that's based on the record. Mine is more basic. Is it possible to say that a person with diagnosed CWP, where there's no dispute he's got CWP, does not have an impairment in the function of his body? Yes, absolutely. That is what simple pneumoconiosis classically is. Are there any cases that say that? I understand your position that merely a diagnosis of CWP does not automatically establish disablement under the statute. I understand that. Are there cases that say that? Your Honor, I don't think there are cases that say that in regard to the disease process pneumoconiosis, and I cannot cite to you the cases, but I believe there are cases, excuse me, that say that not only must you prove the presence of disease, you must also prove the presence of disablement. There has to be some concurrent impairment. In other words, proof of disease, let's put it this way, there is no presumption in the act that if you prove disease, you have satisfied your requirement to prove disablement. I don't think anybody would disagree with that. The question is, what if the disease is CWP where, and we're talking about a coal mine, nobody with CWP belongs in a coal mine. I don't care if it's, they simply don't belong in a coal mine. That's not the position of the Mine Safety Administration, Since you brought that up, rolling back to the issue of whether there was disease here or not, it's significant also on that issue that this gentleman was screened for black blood, and yet he did not present any evidence, a trial of a positive finding for black blood. But we've got a situation here where there is evidence that he has it, there's evidence that he doesn't have it. The commission chooses to believe the evidence that says he has it. Now the question is, are we capable of saying, almost as a matter of law, that anyone who has CWP if meets the definition of disability? Or disablement. That would be contrary to the evidence in this case. There is no functional impairment that this gentleman suffered. Clearly that is the case here, that's what the commission found here, that's what the arbitrator found here, the commission did not alter that finding, and that's because there is no functional impairment here. In fact, this gentleman never testified that he could not do his job from a functional standpoint. That was not a consideration at all. He got laid off, decided to retire, God bless him. But that's not an event of becoming disabled. And I truly believe, and I see my times about up, that we shouldn't burden the public, certainly, with the cost of these claims. But don't think that there isn't a cost to the public when claims like this are found compensable. These things are passed on, and we want to make sure that limited resource is used appropriately to not require an employer to pay for a disablement that was not present, and clearly wasn't present, when you read the definition that the legislature has given us for determining whether disability is present or not. Is there any? So you're saying the event of becoming disabled is not the event of the knowledge of the disease? It cannot be, because at that point in time, his decision to leave employment as a coal miner had already been made. There was nothing, in other words, at that point in time, if the employer wanted to do something, it could do. This man had separated himself from that employment and taken his retirement. Okay. Thank you, counsel. Thank you. Mr. Mazur. May it please the court. Mr. Wirtz. My name is Bruce Mazur, and I represent Mr. David Sims. I was going to say, with your permission, I'll take about five minutes to reply and then rest on my brief, but several things came up that may take more time. In the course of your discussions, could you please answer his central theme, that there can be a diagnosis of CWP. It doesn't equate automatically to disablement. Can you tell us why that is not true? Mr. Wirtz is so unequivocally wrong, it's very difficult for me to describe it. If you look at the deposition testimony, each one says that co-worker's pneumoconiosis is scar tissue. Co-worker's pneumoconiosis is a loss of function of a part of the lung. It's coal dust wrapped in scar with a halo of emphysema. Now, that impairment may not be subject to being measured by pulmonary function testing, but pulmonary function testing has a large range of normal. 120% of your normal to 80%. That's the range of normal. So, you may not be out of the range of normal, and it may not be able to be measured, but you can see it. You don't have to measure it, and the act does not require a specific amount. In both expert witnesses' testimony, they said that you can lose a third of your lung capacity. The act does not require you to lose more than a third of your lung capacity for disabling to be there. So, when he says you still have to consider an individual case whether there was a, quote, unquote, functional impairment, that's like a red herring. Is that what you're saying? Well, it's a red herring, or I guess that would be the kindest way to put it, yes. Because, in fact, they say by definition. That's what both experts say. All the experts say. So, it's true as a matter of law, would you say? I'm saying yes. I'm saying yes. To the misfortune of the coal company, you would like it to be otherwise. I'm sorry. If they worked at your coal mine, and they got coal workers' pneumoconiosis, what you see on that x-ray are many, many very small scars, and at the site of each scar, there's a loss of function. And I don't know anything in the act that says you have to have a certain amount of loss of function. I also agree that if you have coal workers' pneumoconiosis, you should not go back. The key words there are go back. Meaning, at some time, you've retired, you've done whatever, you're not there anymore. You should not go back. As Justice Hoffman said, a person may choose to go back when they shouldn't. That's up to them. But we're here in the court, and the court never requires a person, constructively or directly, to endanger their health. And that's the basis of this Blacklund Law. Now, another thing that Mr. Works left out of there is that everybody agreed, the testimony, that coal workers' pneumoconiosis is a progressive disease. It can progress even without exposure. Now, we don't know who's going to progress. But of common sense is that for hundreds of years, as people have mined coal, men have died of advanced coal workers' pneumoconiosis. And each one of those people, at some time in their life, had no disease whatsoever. Then they had zero over one, negative, but closed in on it. Then they had one over zero, a positive X-ray. There's nothing else. And then it progressed. You're seeing a still picture of this man at this time. None of us know if that's going to progress or not. But the award is for the disease. It's the best we can do. Is it a perfect law? No. But it's the best we can do. And the award is not because he left coal mines. For 15 years, Mr. Works has been trying to make that word event mean something that I don't believe it means. I believe that the award that this man has is because he has coal workers' pneumoconiosis. This is the best way the legislature could express it, and be it for the not being able to go back. Now, in the decision of the commission, they talked about him not being able to go back. That's enough. They get to do that. That's enough. But because they did not talk about functional impairment doesn't mean he doesn't have functional impairment. And another thing about measuring functional impairment is that there are two ways to measure it. One is against that range of impairment. But the better way to measure it is against you. You may have been able to lift a bench press 250 pounds before your injury. Now your best bench press is 175. Well, most normal people, that's not too bad. But for you, you've had quite an impairment. So for this man, when you look at him, you know that he's lost some lung. You've got to compare it to him. So you can have impairment either compared to that range of normal or compared to the man himself. One other thing, and I might as well just close this now. One other thing Mr. Wertz said, he brought up MSHA, the Mine Safety Health Administration, implying, incorrectly implying, improperly implying, that MSHA says it's safe for a miner with co-workers pneumoconiosis to go back to a coal mine. It does not. It never does. Now what it does not do, it does not require you to leave. How many government agencies require someone to leave their work because of a disease or injury? It doesn't happen. It couldn't happen. If they took that position, they would be sitting at the council table with me because they would have said, oh, this guy can't go back to work. The coal mine would say, oh, yeah. So MSHA, nobody takes the position. The guy can't go back. However, this jumps right over the fact that the Department of Labor with NIOSH as the statutory advisor says that if you have pneumoconiosis by their exit, you get to have a job with less dust exposure. That's a recognition of the danger. They can't make you leave. That's up to you. And it may be, I don't know if the word came up, but it may be if you There's another side to that coin. These men, these coal miners aren't like us with law degrees and jobs like we have. They're people with high school educations who have only one way to make a living for their family at that level. And it's a good living while they can do it. I always have the story that I tell to the commission and others that imagine that Joe Coal Miner sitting in his chair watching TV late at night thinking about going to work the next day and God comes and talks to him. And he says, Joe, if you continue to go in that coal mine and breathe this coal dust for the next five years, it's going to kill you. You'll be dead in five years. I don't know why I'm telling you this. I'm going to tell no one else but I'm telling you. But if you quit going to that coal mine tomorrow, you'll live another 15 years of healthy life. Joe goes to work the next day. He says, God talked to me last night. They say, what did he say? He said I'm going to die in five years. Of course, it's not a question. He's going to quit the coal mine. He's going to continue, as all of us would in our own way, to provide for the family, to do what's necessary at the age he is. Therefore, to make it as simple as possible, I defy Mr. Ravizuski to show in the testimony that this is anything but an impairment, if you have pneumoconiosis, and it is anything but a medical preclusion of going back to work. Both of those are disabled under the Act. And while it's fun for Defense Counsel to play around with what those words mean, Ravizuski has said what it means. Other cases have said what it means. It means you shouldn't go back. The event is that he's got black lung. The award is for that disease. And I ask that you affirm the commission. Thank you. Thank you, Counselor. Mr. Wirtz, you may reply. I'll try to be responsive to what Mr. Wissor had to say in regard to the issue of functional impairment. The only testing we have here was the testing that was done by Dr. Cohen, Mr. Wissor's expert. And according to Dr. Cohen, his spirometry was normal. His blood gases were normal. He had a high breathing reserve. He testified that this gentleman had no ventilatory limit to exercise. And he testified further that he could not say this gentleman's pulmonary function was reduced from what it was 30 years before. And that was unquestioning by myself because 30 years before predates his employment as a coal miner. If the expert for the claimant can't say that his breathing is any different or his ventilatory function is any different from when he signed to prior to when he was a coal miner, there is no functional impairment that's been proven here. Did that same expert testify though consistently with what Mr. Wissor argued, that if you have CWD, there is a loss of function in that part of the lung and scar tissue and so forth? I don't recall that. Mr. Wissor, you always ask that question about that little pinpoint dot there in your lung. Can that little pinpoint dot function? That's the medical evidence that any of these experts would say. I think the most true, but the most probative, if you want to really get to the issue here, what does it mean for this gentleman? Did he have any ventilatory limit to exercise? No. Is his pulmonary function today, can you say it's any different? Than before he was a coal miner? No. Those are the questions. But would those experts say that that lung tissue is going to function the same as it did before? Not at that pinpoint dot, no, Your Honor. Does it mean anything to him in terms of what he does every day, his work, his livelihood? No, it means nothing. That's why we do spirometry. Mr. Wissor said I keep harping on the word event and trying to make something of it. The word event is in the statute. The word event you have to deal with. Are we going to say that the event is something that can be supplied after the individual leaves his employment as a reason why he left his employment? That's really the crux of the issue here. Can you supply that ex post facto? As I say, the cases Mr. Wissor cited, if you look at them, they all are cases where someone is told you've got disease or perhaps it's a low back problem. You can't lift any more than 50 pounds. And they say, okay, I'm gone. In the case that you decided regarding the wage differential, that was someone who I think had an arm injury and they were told you can't lift that much anymore. I can't remember what his job was. He acted on it. There was an event. Are we going to allow an event to be something that's created by going and getting an expert long after the individual leaves work to say, you know, you can't lift more than 50 pounds. And then allow that individual to say, hey, I'm disabled from that last job where I got laid off. Is that what we're going to allow? Is that what the legislature wanted when they wrote the statute the way they did? Shouldn't we reserve that type of award for those people who legitimately are limited in what they can do and they act upon it in their job to their detriment? That seems to be the purpose behind the language. And I would ask that that be the way the language is applied. Thank you. Thank you, counsel, both for your arguments in this matter this afternoon and for taking under advisement.